**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

GREGORY SHERF,           )
                                     )
                   Plaintiff,  )  Case No.:      05-447-CV-W-HFS
                                     )
v.                                  )
                                   )
CHARLES ANTONIAK and    )
CROWD SYSTEMS, INC.,     )
                                   )
                 Defendant.  )

**<u>DEFENDANTS' MOTIONS IN LIMINE TO
EXCLUDE/ALLOW EVIDENCE</u>**

COME NOW Defendants Charles Antoniak ("Antoniak") and Crowd Systems,

Inc. ("CSI") (known collectively as "defendants"), by and through their undersigned

counsel, and hereby respectfully move this Court *in limine* to exclude all evidence and

prohibit all questions, references, argument and testimony, direct or indirect, at trial and

in *voir dire*, and to allow evidence as to the following issues.

**1.     EVIDENCE OF DEFENDANT CSI'S VICARIOUS LIABILITY
FOR ACTS OF DEFENDANT ANTONIAK ONCE ANTONIAK
PLACES SHERF UNDER ARREST SHOULD BE EXCLUDED.**

Plaintiff should be prevented from presenting any evidence at trial that CSI would

be vicariously liable for any acts of Officer Antoniak after Antoniak made the decision to

place Sherf under arrest because Antoniak's conduct from that point forward was <u>not</u>

"within the course and scope" of his employment with CSI, but rather was in the course

of performing his official police duties as a Kansas City, Missouri police officer on

behalf of the public.  Plaintiff's sole theory in this case against CSI is based upon

*respondeat superior* on the grounds Officer Antoniak's conduct was within the course

and scope of his employment with CSI when he arrested Sherf.  Under the facts and law

of this case, such proposition must fail as a matter of law, and therefore, CSI cannot be held vicariously liable for any conduct of Officer Antoniak which occurred once he made the decision to arrest Sherf as such conduct as outside the scope of his employment with CSI.

In the case of *Noah v. Ziehl*, 759 S.W.2d 905 (Mo.App. E.D. 1988), a bouncer at a bar allegedly assaulted a patron, and the patron later sued the bar under a theory of *respondeat superior*, including punitive damages, for the conduct of its bouncer. The court there held that the bouncer was not acting within the course and scope of his employment with the bar when he assaulted the patron outside the bar, even though he was technically still on-duty at the bar. *Id.* at 912. In so holding, the court stated that, "Whether an employee is engaged in the scope and course of his employment is not measured by the time or motive of the conduct, but whether it was done by virtue of the employment and in furtherance of the business or interests of the employer." *Id.* at 910.

In our case, Officer Antoniak's decision to arrest and book Sherf was actually outside the scope of what CSI could have employed him to do, as he was acting solely as a KCPD police officer at that point. The "business" of CSI is to provide security and crowd control at Bartle Hall, not to arrest and book. Antoniak arrested Sherf independent of his role as "private security" at Bartle Hall on behalf of CSI, and his conduct from that point forward was "different in kind from that authorized" by CSI and was "too little actuated by a purpose to serve" CSI. *See Noah*, 759 S.W.2d at 910 (citing Restatement (Second) of Agency § 228 (1957)). The "purpose" of Officer Antoniak's arrest was to serve the public, not CSI, by enforcing the law and removing and bringing to justice a potential law violator. Therefore, Officer Antoniak's conduct in arresting Sherf cannot,

as a matter of law, be found to have been "within the course and scope" of Antoniak's employment with CSI.

While Missouri does not appear to have yet addressed the issue of off-duty police officers working for private security companies, other jurisdictions have and have consistently held that if the off-duty police officer is performing a governmental function (i.e., arrest), as opposed to part of his/her private security duties, then vicarious liability will not usually attach to the employer.

> Consistent with [state] agency law, the private employer of an off-duty officer cannot generally be held vicariously liable for actions taken by the off-duty officer outside of the officer's regular scope of employment as a security guard. As such, when the officer is summoned to official duty by the municipality, or otherwise performs traditional police actions outside of the scope of his or her private employment, the private employer will not be generally liable.

*White v. Revco Discount Drug Centers, Inc.*, 33 S.W.3d 713, 724 (Tenn. 2000) (if officer's actions giving rise to the tort were taken in the officer's official capacity, private employer cannot be held vicariously liable); *see also, Lande v. Menage Ltd. Partnership,* 702 A.2d 1259, 1261 (D.C.1997); *Tapp v. State,* 406 N.E.2d 296, 301 (Ind.Ct.App.1980); *Lovelace v. Anderson,* 126 Md.App. 667, 730 A.2d 774, 781 (Md.Ct.Spec.App.1999); *State v. Glover,* 52 Ohio App.2d 35, 367 N.E.2d 1202, 1204 (1976); *Whitely v. Food Giant, Inc.,* 721 So.2d 207, 209 (Ala.Civ.App.1998); *State v. Kurtz,* 78 Ariz. 215, 278 P.2d 406, 408 (1954); *State v. Wilen,* 4 Neb.App. 132, 539 N.W.2d 650, 658 (1995); *Glenmar Cinestate, Inc. v. Farrell,* 223 Va. 728, 292 S.E.2d 366, 369-70 (1982); *Duncan v. State,* 163 Ga.App. 148, 294 S.E.2d 365, 366 (1982); *State v. Brown,* 36 Wash.App. 166, 672 P.2d 1268, 1269-70 (1983); *Mansfield v. C.F. Bent Tree Apartment Ltd.*, 37 S.W.3d 145 (Tex.App. 2001). For these reasons, CSI cannot be held liable for *any*

*damages* which might arise after Officer Antoniak places Sherf under arrest and begins exercising his official duties and performing his police actions, as such acts are outside the course and scope of his employment with CSI.

### 2. EVIDENCE OF DEFENDANTS' LIABILITY INSURANCE SHOULD BE EXCLUDED

Evidence concerning liability insurance is not admissible to prove negligence or wrongful conduct of the insured party. *See, Federal Rule of Evidence* 411; *See also Higgins v. Hicks Co.,* 756 F. 2d 681 (8th Cir. 1985); *Charter v. Chleborade,* 551 F. 2d 246 (8th Cir. 1977). Accordingly, said evidence and/or references should be excluded.

### 3. CHARACTER EVIDENCE OF CHARLES ANTONIAK SHOULD BE EXCLUDED

Federal Rule of Evidence 404 specifically provides that, "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Fed. R. Evid. 404(a). Defendants would submit that any attempts by plaintiff to introduce character evidence of Charles Antoniak, which could include references to prior citizen's complaints, interoffice complaints, or disputes with other officers, or police internal affairs investigations, pertaining to Charles Antoniak's job performance, should be excluded as improper character evidence, as Officer Antoniak's prior police conduct has no bearing on whether or not Antoniak used excessive force or improperly arrested plaintiff on the day in question. Any previous complaints are also too far removed in time to be relevant to the subject incident. Defendants also incorporate herein their arguments contained in Defendants' Memorandum Response to Plaintiff's Memorandum in Opposition to Quash Subpoena., previously filed with the Court.

4

### 4. PLAINTIFF SHOULD BE PREVENTED FROM PRESENTING ANY EXPERT TESTIMONY OR EVIDENCE AS NO EXPERTS HAVE BEEN DESIGNATED OR DISCLOSED BY PLAINTIFF

Plaintiff Sherf had the opportunity, pursuant to this Court's Scheduling Order and amendments thereto, to properly disclose and designate any experts pursuant to Fed. R. Civ. P. 26(a)(2) which plaintiff intended to use in this case. In fact, plaintiff requested, and was granted, additional time after the original deadline, to disclose any experts he wished to use. Plaintiff eventually withdrew every previously-disclosed expert in the case, by way of correspondence dated August 21, 2006 from attorney Sophie Woodworth. (*See*, August 21, 2006 correspondence, attached hereto as Exhibit A). Therefore, plaintiff should be prevented from presenting any testimony or evidence from any expert at trial, or from any other witness which constitutes expert-type testimony or evidence. Such testimony or evidence would include that which is based on scientific, technical, or other specialized knowledge within the scope of Fed. R. Evid. 702.

Notably, defendants anticipate plaintiff will attempt to call Dr. Rory Murphy and Dr. William Hopkins to present expert-type testimony regarding alleged physical and psychological injuries plaintiff claims to have sustained as a result of the February 15, 2002 arrest incident. As neither Dr. Murphy nor Dr. Hopkins are designated experts in this case, their testimony, if allowed at all, should be only be limited to their care and treatment of plaintiff Sherf, and they should not be allowed to render any medical opinions apart from their care and treatment of plaintiff, as such opinions would constitute "expert" testimony. *See Kehr v. Knapp*, 136 S.W.3d 118, 123-124 (Mo. App. E.D. 2004) (treating physician is first and foremost a fact witness, as opposed to an expert witness, and testimony should be limited to care and treatment, rather than opinions

developed for trial).  As such, Drs. Murphy and Hopkins' testimony, if allowed at trial, should be limited to their respective care and treatment of Plaintiff Sherf, and both should be prohibited from rendering any testimony outside of their care and treatment of Plaintiff Sherf, and should be so instructed as to prevent against improper testimony from reaching the jury.

Further, permitting plaintiff to attempt to illicit expert opinions regarding economic loss issues in the case, is similarly improper based upon the fact no experts were designated by plaintiff.  For further discussion of this issue, see defendants' Motion in Limine No. 10.

### 5.  EVIDENCE RELATING TO PUNITIVE DAMAGES SHOULD BE EXCLUDED.

Punitive damages are awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others.[1]  *Larkin v. Brown,* 41 F.3d 387 (8th Cir. 1994).  Because the application of punitive damages is "extraordinary and harsh," plaintiff must offer evidence sufficient to meet the "clear and convincing standard of proof."  *Brandt Distrib. Co. v. Fed. Ins. Co.,* 247 F.3d 822 (8th Cir. 2001).  "Conduct sufficient to support an award of punitive damages…must be 'more flagrant in nature' than that sufficient to establish ordinary negligence, i.e., a breach of duty to use reasonable care."  *Johnson v. Cowell Steel Structures, Inc.,* 991 F.2d 474, 478 (8th Cir. 1993).

In this case, there is no evidence to support an award of punitive damages against Charles Antoniak or CSI.  Plaintiff's claims against defendants are, at most, failures to use reasonable care, in that Charles Antoniak breached the standard of care in performing

---

[1] In federal civil rights cases, the standard for punitive damages is "malicious or recklessly indifferent" to plaintiff's civil rights.  See 8th Cir. Civil Jury Instr. 4.50C (2007).

his law enforcement duties, rather than demonstrating an evil motive or reckless indifference to the rights of Gregory Sherf. Therefore, the jury should not hear any evidence regarding punitive damages.

Further, with regard to CSI, any award of punitive damages is improper under the facts of this case as the only claim pending against CSI is *respondeat superior* for the conduct of Officer Antoniak based upon the allegation that Officer Antoniak was acting "within the course and scope of his employment" with CSI when the arrest incident occurred. As set forth in Restatement (Second) of Torts § 909 (1979), punitive damages can *only* be assessed against a master/principal because of an act by an agent if: (1) the principal or managing agent authorized the doing and the manner of the act, (2) the agent was unfit and the principal or managerial agent was reckless in employing or retaining him, (3) the agent was employed in a managerial capacity and was acting in the scope of the employment, or (4) the principal or managerial agent of the principal ratified or approved the act. *Id.*

In the case at bar, CSI had <u>no authority</u> over Officer Antoniak once he decided to place Sherf under arrest. Officer Antoniak's capacity at that point changed from a private security officer to an authorized police officer carrying out a public governmental function separate and distinct from what he had been hired to do by CSI. Therefore, CSI <u>could not</u> authorize, ratify or approve the conduct of Officer Antoniak in arresting Sherf, because it occurred while Officer Antoniak was in his official police capacity. CSI had no say or authority over whether Sherf would be arrested or not once Officer Antoniak placed him under arrest, as Officer Antoniak made this decision solely utilizing his legal authority as a police officer. Therefore, Antoniak's arrest of Sherf was performed <u>outside</u>

the course and scope of Antoniak's employment with CSI, and therefore, vicarious liability does not attach to that conduct.

Additionally, Officer Antoniak was hired by CSI through KCPD's off-duty pool, members of whom are selected by the KCPD for placement in the pool. CSI had no authority or ability to decide who was placed in the KCPD off-duty pool and who was not. CSI also had no previous knowledge of any propensities of Officer Antoniak to use excessive force or knowledge that he was anything but completely fit for the job at Bartle Hall. In fact, Officer Antoniak had worked numerous times for CSI before this occasion and CSI had never had any prior issues with Officer Antoniak pertaining to use of excessive force or acting inappropriately with the public. Therefore, CSI cannot be said to have acted recklessly by way of its hiring of Officer Antoniak to work off-duty at the Bartle Hall event. As none of the four requisite elements specified by Section 909 to hold CSI liable for punitive damages is present, CSI may not be assessed punitive damages in this case.

**6.      REFERENCES OR SUGGESTIONS THAT CHARLES ANTONIAK DID NOT VOLUNTARILY RESIGN FROM THE KANSAS CITY MISSOURI POLICE DEPARTMENT SHOULD BE EXCLUDED AS UNSUPPORTED, CONTRARY TO THE RECORD, MISLEADING, AND PREJUDICIAL**

During the deposition of Charles Antoniak, taken on April 25, 2006, Officer Antoniak testified that he voluntarily resigned from the Kansas City, Missouri Police Department, and that he was not asked to leave, nor did he feel any pressure to resign. (See Deposition of Charles Antoniak ("Antoniak Depo."), pg. 23 lines 8 through 21, attached here as Exhibit B). No testimony has been elicited, nor have any documents or records been produced in this case which suggest or indicate otherwise. Plaintiff may

attempt to suggest or infer to the jury that Charles Antoniak may have been "forced" out

of the police department, or otherwise involuntarily ended his employment with the

department, when in fact, this is the opposite of what occurred based upon the record in

this case.  As such, Plaintiff should be prohibited from injecting a "false issue" in the case

that Officer Antoniak did not leave the police force voluntarily, but was in fact

terminated or "forced out".  *See Harris v. Washington*, 654 S.W.2d 303, 307 (Mo. App.

E.D. 1983) (where there is evidence in the case which might raise a false issue, it is

reversible error for the trial court to fail to give an instruction withdrawing such evidence

from the jury's consideration).

### 7.    DEFENDANTS SHOULD BE ALLOWED TO ADMIT EVIDENCE REGARDING GREGORY SHERF'S PRIOR AND SUBSEQUENT MENTAL HEALTH AND DRUG USAGE ISSUES

Fed. R. Civ. P. 403 holds evidence admissible that is more probative than

prejudicial to assist the jury in understanding the issues presented.  "In an action for

personal injuries, the health and physical condition of the injured person both prior and

subsequent to the occurrence is material."  *Friese v. Mallon*, 940 S.W.2d 37, 42 (Mo.

App. E.D. 1997) (citing *Spalding v. Monate,* 650 S.W.2d 629 (Mo. App. E.D. 1981).

"Any competent evidence tending to prove or disprove the nature and extent of the

alleged injuries received is admissible."  *Id.*  Further, "Evidence of the difference in

[plaintiff's] condition prior to and after the [occurrence] is relevant to prove the extent to

which the [incident] injured [plaintiff]." *Id.*

The jury is entitled to information and/or testimony from Mr. Sherf and others

regarding his prior and subsequent mental health issues and marijuana usage, as

information pertaining to these issues is "competent evidence" that will explain Mr.

9

Sherf's behavior during the subject incident, and also his claims of physical and psychological injuries subsequent to the incident. In the absence of evidence regarding Mr. Sherf's prior and subsequent mental health treatment and drug usage, the jury will be without sufficient information to fairly evaluate Mr. Sherf's claims of mental and physical injuries in the case, as well as possible explanation for Mr. Sherf's behavior and conduct leading up to and subsequent to his arrest.

Additionally, as it pertains to Gregory Sherf's marijuana usage, Sherf has previously testified at deposition that he would only occasionally smoke a single marijuana cigarette at a social function, but that he did not regularly use marijuana. However, medical records obtained in this case clearly indicate that Gregory Sherf had a marijuana addiction and habitually used the drug to the extent it became necessary for him to seek medical treatment in an effort to quit smoking marijuana. (*See e.g.*, medical records from Sergio M. Zaderenko, M.D., and others). Accordingly, such evidence and testimony regarding Sherf's marijuana use is relevant not only to explain his behavior the night of the incident, as well as his prior and subsequent mental health status, but also to allow a jury to evaluate his credibility on these issues.

Evidence regarding Greg Sherf's use of prescription antidepressants, sleeping medications, and other psychotropic medications prior to the subject incident should also be admissible at trial. Gregory Sherf's use of such medications prior to the date of his arrest indicated Mr. Sherf was experiencing <u>prior</u> episodes of depression, anxiety, sleep related disorders, and other conditions, which plaintiff claims are causally-related to the February 15, 2002 arrest incident, which clearly go to the nature, extent and cause of Mr. Sherf's claimed injuries and mental distress after the subject arrest. It is clear, based

upon usage of these medications prior to the subject incident, that Mr. Sherf was experiencing some type of prior mental health, psychological and sleep related conditions, as will be addressed by defendants' medical expert, Dr. Patrick Hughes, about which a jury is entitled to know if Mr. Sherf intends to argue that he currently suffers from such conditions which he attributes to the arrest.

**8.    ANY WITNESSES NOT IDENTIFIED ON PLAINTIFF'S TRIAL WITNESS LIST SHOULD BE EXCLUDED FROM TESTIFYING AT TRIAL**

Pursuant to this Court's Scheduling Order dated January 9, 2006, and subsequently amended by Order dated June 5, 2006, all discovery in the case closed on October 31, 2006.  Also pursuant to the Court's Scheduling Orders, the parties exchanged trial witness lists on or about December 15, 2006.  Plaintiff, however, has now indicated by way of letter from counsel dated February 22, 2007 that he wishes to add two additional witnesses to his previous trial witness list which were not previously identified or deposed in the case, including Dr. William Hopkins and Attorney Daniel Craig. Plaintiff has given no explanation as to why these new witnesses were not previously included on his trial witness list to allow defendants sufficient opportunity to depose and investigate these individuals.[2]  Defendants are now severely prejudiced by not being able to depose these individuals, as it is likely these individuals will refuse to informally speak with defendants' counsel given their relationships to plaintiff and the case.  Thus, this late attempt by plaintiff to add trial witnesses to the case essentially on the eve of trial is not harmless and no "substantial justification" has been presented by plaintiff.  Therefore, these late-disclosed witnesses should be excluded from testifying at trial.

---

[2] February 22, 2007 was the first time defendants' counsel heard the name of attorney David Craig mentioned in the context of this case.

Pursuant to Fed. R. Civ. P. 37(c)(1), "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." *See, Looney v. Zimmer, Inc.*, 2004 WL 1918720, *3-4 (W.D. Mo. 2004)[3] (holding that party's failure to disclose witnesses on a timely basis was not substantially justified and also was not harmless, and therefore strike of witnesses was appropriate). In *Harris v. Steelweld Equipment, Co., Inc.,* 869 F.2d 396, 399 (8th Cir. (Mo.) 1999), the Court held that the exclusion of plaintiff's expert at trial was appropriate when plaintiff failed to comply with the rules requiring disclosure of experts in a timely fashion. *See also, Blue v. Rose,* 786 F.2d 349 (8th Cir. (Mo.) 1986) (ruling that witness would not be permitted to testify as he had not been listed by party as required by Court's pretrial order and local court rule). In the *Harris* case, the Court determined that even if the party opposing the use of the expert at trial would not be prejudiced by the late disclosure, discovery in the case had been completed and the case was to remain in the same posture until trial, and thus allowing a late-disclosed witness to testify at trial was improper. *Harris,* 869 F.2d at 399.

9.     **COMMENTS BY PLAINTIFFS' ATTOREY APPEALING TO THE SYMPATHIES OF THE JURORS**

A jury may not base its verdict upon sympathy or on the individual jurors' personal experiences. *Little v. Bi-State Development Agency,* 423 S.W.2d 34, 38 (Mo. App. 1987). Defendants request that the Court enter an order precluding the plaintiffs'

---

[3] A copy of the opinion is attached hereto as Exhibit C.

attorney from making improper appeals to the sympathies of the jurors by asking that they try to imagine themselves in the position of the plaintiff.

### 10.    EVIDENCE OF LOST WAGES SHOULD BE EXCLUDED

Because plaintiff has not identified any experts to offer testimony that he sustained an injury which prevented him from working, or otherwise reduced his earning capacity, evidence regarding purported lost wages should be precluded.  In Missouri, to recover for lost wages, the evidence of value "must be reasonably certain and must not be based on speculation or, in other words, 'must afford a basis for a reasonable estimate of the amount of the loss.'"  *Fairbanks v. Weitzman*, 13 S.W.3d 313, 320 (Mo. App. 2000).

Plaintiff Sherf has provided written discovery responses, and has testified at deposition, that he claims to have suffered $123,533 in lost wages as a result of the purported unlawful arrest on February 15, 2002.  (*See* Plaintiff Gregory Sherf's Supplemental Answers to Defendant's Interrogatories, No. 6 attached hereto as Exhibit D; Deposition of Gregory Sherf, Vol. II, pg. 240, line 18 through pg. 241, line 5 attached hereto as Exhibit E).  During Gregory Sherf's deposition, Mr. Sherf discussed how his income is earned as a stock broker at Merrill Lynch, including the fact some of his income his based upon the performance of his client's investment accounts.  (Ex. E, pg. 245, line 17 through pg. 247, line 18).  Sherf also admitted during his deposition that some of his decreased earnings during the timeframe from 1999 through 2005 were due to the performance of the stock market, rather than his ability or inability to work as a result of the subject incident.  (Ex. E, pg. 249, line 6 through pg. 250, line 22, and  pg. 253, line 17 through pg. 255, line 11).  In fact, Mr. Sherf testified that he was unable to quantify the amount of wages he believes he lost as a result of the February 15, 2002

arrest incident versus a general decrease in the stock market performance. (*Id*.) Moreover, when Mr. Sherf was asked how much of the $123,533 that he was claiming in lost wages in the case was based on the performance of the market, he responded "100 percent". (*Id*.)

Sherf also admitted that no one has told him that the reason his income decreased from the timeframe of 2002-2003 was the result of the arrest incident, which clearly requires some type of expert causation testimony, either from a economist or a mental health expert, to link his decreased income with him psychological well-being. (Ex. E, pg. 255, line 22 through pg. 256, line 7). Without such expert testimony, a jury will be left to rank speculation and conjecture as to how much, *if any*, lost wages Gregory Sherf in fact lost as a result of the February 15, 2002 arrest incident, rather than some other unrelated cause.

There is simply no evidence in the record, other than coming solely from Gregory Sherf, that his decreased earnings, which began in 2000, two years prior to his arrest, was the result of his inability to be as productive at his job as a result of the February 15, 2002 incident. Based on the record in this case, there are insufficient foundational facts which are required to allow a jury to reasonably attribute Sherf's claimed diminished earnings and the psychological distress he claimed to have suffered in 2002. This is simply not a case involving clearly appreciable causal events, such as a broken leg, job termination, etc., where a lay person on the jury could reasonably conclude, without the assistance of an expert, that one caused the other; in other words, that the mental distress allegedly suffered by Gregory Sherf on and after February 15, 2002, caused him to thereby become less productive at his job, costing him $123,533 in income. *See Romer v. District of*

*Columbia*, 449 A. 2d 1097, 1100 (D.C. App. 1982) ("damages may not be based on mere speculation or guesswork.") While damages are not required to be proven with mathematical certainty, there must be some reasonable basis on which to estimate damages. *Id.* (citations omitted).

Not only are there problems with Sherf mathematical computations in being able to point to what aspect of his decreased earnings may have been caused by the performance of the stock market, rather than any events for which defendants may be liable, but plaintiff is also lacking the requisite element of causation to establish that <u>any</u> of his diminished wages were as the result of alleged mental distress sustained following his arrest. Without some reasonable factual foundation and basis for a numerical computation, as well as a causal relation, Plaintiff Sherf should not be permitted to submit the issue of lost wages to the jury, as to do so will only result in the jury resorting rank speculation, conjecture, and guesswork in determining what, if any, lost wages Greg Sherf may be entitled to in this cause of action.

A damages award cannot stand when the only evidence is supported is speculative or purely conjectural. *Haley v. Pan American World Airways, Inc.*, 746 F.2d 311, 316 (5th Cir. 1984). "It is universally accepted that in order to bear [a plaintiff's] burden in this regard [lost wages], a plaintiff must offer something more than her unsupported averment as to past income or lost earning capacity." *Cerveny v. American Family Ins. Co.*, 626 N.E.2d 1214, 1224 N.2 (Ill. App. 1993); *see Boody v. U.S.*, 706 F. Supp. 1458, 1466 (D. Kan. 1989) (recovery of lost wages "may not be had if the alleged damages are too conjectural or speculative to form a basis for measurement.")

A helpful discussion of the ability to prove and recover past wage loss is presented in *Hymel ex rel. v. Thomas*, 758 So.2d 201 (La App. l999). The Court in that case reasoned:

> To recover for actual wage loss, a plaintiff must prove the length of time missed from work due to the tort and must prove past lost earnings. Past lost earnings are susceptible of mathematical calculation from evidence offered at trial. An award for past lost earnings requires evidence as reasonably establishes the claim, which may consist of the plaintiff's own testimony. An award for past lost earnings is not subject to the much-discretion rule when it is susceptible of mathematical calculation from documentary proof. The plaintiff's uncorroborated, self-serving testimony will not be sufficient to support an award if it is shown that corroborative evidence was available and was not produced.

*Hymel*, 758 So.2d at 209. In the base at bar, the only testimony presented in this case is plaintiff's own "uncorroborated, self-serving testimony". While plaintiff could have sought the benefit of an economist expert, or medical causation expert, to corroborate his lost wage allegations, plaintiff chose not to in this case. Accordingly, Plaintiff Sherf should be barred from presenting any evidence or testimony regarding lost wages he claims to have sustained as a result of the February 15, 2002 arrest incident, as any such testimony, or self-serving calculation performed by him, and him alone, are way too speculative and factually unsupported to be reasonably reliable to the jury.

**11.    THE COURT SHOULD EXCLUDE ANY REFERENCES TO OR TESTIMONY REGARDING ANY OFFERS OF COMPROMISE OR SETTLEMENT OF THIS MATTER BY DEFENDANTS**

The Court should exclude any testimony or argument regarding or referencing any offers of settlement or compromise made by defendants or their attorneys or insurance carriers. Defendants have made offers to settle this matter to plaintiffs' counsel. However, no settlement has been agreed between the parties as of this date.

Evidence concerning offers to settle or compromise are not admissible at trial. *See, State ex rel. Mallan v. Huseman,* 942 S.W.2d 424 (Mo. App. 1997). Therefore, plaintiff should be prohibited from introducing any testimony or making reference to any offers of settlement or compromise by defendants.

**12.  THE COURT SHOULD EXCLUDE ANY TESTIMONY OR REFERENCE REGARDING THE NET WORTH OR FINANCIAL STATUS OF DEFENDANTS**

The Court should prohibit any testimony regarding the net worth, financial status or income of defendants. Such testimony would be irrelevant and unduly prejudicial. It has been clearly held in Missouri that evidence of a defendant's financial condition is not admissible in the first stage of a jury trial. *See, Barnett v. Turbomeca,* 963 S.W.2d 639 (Mo. App. 1997).

**13.  THE COURT SHOULD EXCLUDE ANY REFERENCE TO OR TESTIMONY REGARDING OTHER LITIGATION INVOLVING DEFENDANTS**

The Court should exclude any reference to or testimony regarding other litigation involving defendants, as such evidence is irrelevant and unduly prejudicial. Evidence relating to other litigation will not enlighten a jury on whether the allegations set forth in plaintiffs' Complaint in any way occurred. Missouri precedent is clear that other allegations of tortious acts are generally inadmissible to show the culpability of a party on the occasion in question. *See, Deveney v. Smith,* 812 S.W.2d 810 (Mo. App. 1991). Additionally, evidence of other lawsuits against a defendant is irrelevant and inadmissible. *See, Barr v. Plastic Surgery, Ltd.,* 760 S.W.2d 585 (Mo. App. 1989). As such, plaintiff should be prohibited from offering or otherwise alluding to evidence of collateral litigation involving the defendants.

14. **THE COURT SHOULD EXCLUDE ANY REFERENCE TO OR TESTIMONY REGARDING WITNESSES AND DOCUMENTS NOT PRODUCED IN DISCOVERY**

The purpose of the discovery procedure is to narrow the issues, to eliminate surprise, and to achieve substantial justice. *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 143 (8th Cir. (Mo.) 1968); *see, Troknya v. Cleveland Chiropractic Clinic*, 280 F.3d 1200, 1205 (8th Cir. (Mo.) 2002) (holding district court did not abuse its discretion in excluding late-disclosed evidence in an effort to avoid unfair surprise and to achieve substantial justice). Fed. R. Civ. P. 26(b)(1) provides, "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Additionally, a party is required to seasonably supplement and amend its discovery responses as well as it deposition answers "to include information thereafter acquired. . . if the party learns that in some material respect the information disclosed is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e).

"A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). A trial judge has board discretion in deciding whether a Rule 26(a) violation is substantially justified or harmless. *Koenig v. CBIZ Benefits & Ins. Services,*

*Inc.*, 2006 WL 2715137, *4 (D. Neb. 2006).[4] If prejudice is caused to a party entitled to disclosure, harm occurs warranting exclusion of undisclosed evidence pursuant to Rule 37(c)(1). *Id.* A trial court is empowered to exclude exhibits and witnesses not disclosed in compliance with its discovery and pretrial orders. *See*, *Boardman v. National Medical Enterprises*, 106 F.3d 840, 843 (8th Cir. (Mo.) 1997).

Specifically, and by way of example, plaintiff included in plaintiff's Exhibit List as item number six was "Photographs taken at World of Wheels auto show". Despite requests from defendants for plaintiff to produce said photographs, in compliance with the Court's Scheduling Order for inspection of exhibits intended to be used by a party at trial, plaintiff has never produced these purported photographs to defendants' counsel for inspection. At the recent exhibit inspection between counsel held on January 15, 2007, defendants requested plaintiff produce for inspection all exhibits on his exhibit list, including the photographs from the World of Wheels auto show. Counsel for plaintiff agreed to produce said photographs, but to date, no such photographs have been produced to defendants. Therefore, defendants would submit that such photographs, if any exist, should be excluded from evidence at trial on the basis of unfair surprise and prejudice to defendants as a result of plaintiff's failure to produce them. Similarly, plaintiff should not be permitted to offer any exhibits not previously identified or produced in discovery, including photographs, videotapes, statements, records, or other documents or tangible items, any surprise expert or lay witnesses, or exhibits that were not disclosed before trial due to the prejudice that would be caused to defendants.

---

[4] Attached hereto as Exhibit F.

### 15. ASKING COUNSEL TO ENTER INTO A STIPULATION OR FOR EVIDENCE IN FRONT OF THE JURY

Defendants request that the Court enter an order precluding all parties from asking opposing counsel to enter into stipulations or requesting counsel or their clients to produce any information or documents either in their files or believed to be in their file in front of the jury.

### 16. REFERENCE TO DECLINING TO ENTER INTO A STIPULATION

Defendants request that the Court enter an order precluding all parties from making any reference whatsoever to whether or not opposing counsel have declined to stipulate to any facts or have declined to agree to anything at all.

### 17. REFERENCE TO ANY VERDICTS RECEIVED BY PLAINTIFF'S OR DEFENSE COUNSEL OR VERDICT ENTERED AGAINST DEFENDANTS

Defendants request that the Court enter an order precluding all parties from making any reference to any verdicts, favorable or unfavorable, received by plaintiffs or defendants' counsel, or reference to any verdicts entered in favor or against defendants, as such issues are irrelevant to the case and would be extremely prejudicial if disclosed to the jury.

**WALDECK, MATTEUZZI & SLOAN, P.C.**

*/s/ Brian T. Goldstein*
John M. Waldeck        Mo. Bar #47570
Brian T. Goldstein        Mo. Bar #50191
11181 Overbrook Road, Suite 200
Leawood, KS 66211
P: 913-253-2500
F: 913-253-2501
**ATTORNEYS FOR DEFENDANT**

**Certificate of Service:**

The undersigned certifies that on the 2nd of April, 2007, the foregoing was electronically filed with the United States District Court for the Western District of Missouri using the CM/ECF system which sent notification of such filing to the following:

David R. Smith
David R. Smith, P.C.
901 W. 43rd Street
Kansas City, MO 64111
P: 816-753-9393
F: 816-778-0957

Sophie Woodworth
Law Offices of Sophie Woodworth
1125 Grand Blvd., Suite 1400
Kansas City, MO 64106
P: 816-519-3876
F: 816-756-2265
**ATTORNEYS FOR PLAINTIFF**


*/s/ Brian T. Goldstein*
ATTORNEYS FOR DEFENDANT


**CERTIFICATE OF SIGNING:**

The original of the foregoing document was signed by Brian T. Goldstein and is being kept in the client files of Waldeck, Matteuzzi & Sloan, P.C.

21