# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

GREGORY SHERF,                    )
           Plaintiff,          )
                   )    Case No.:   05-447-CV-W-HFS
v.                                )
                   )
CHARLES ANTONIAK, et al.,         )
           Defendant.          )

## PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE*

**COMES NOW** plaintiff, by and through counsel, and hereby offers the following suggestions in opposition to Defendants' motion in limine to exclude/allow evidence.

### 1. Evidence of vicarious liability of Crowd Systems, Inc. should be admitted.

Defendants would have the Court exclude evidence of the liability of Crowd Systems, Inc. for the actions of Officer Antoniak after he decided to arrest Mr. Sherf, claiming those actions were not within the course and scope of his employment with CSI. In support, Defendants have cited non-binding legal authority from other jurisdictions, and only one Missouri case (*Noah v. Ziehl*, 759 S.W.2d 905 (Mo.App.E.D.1988) which is not only factually distinguishable for the point Defendants propose, but it also serves to *support* Plaintiff's position that said evidence is indeed admissible.  To begin with, *Noah* did not involve the actions of an off-duty police officer acting as a security guard for a private company; it involved the actions of a bouncer employed by a tavern owner. Secondly, there was ample evidence to conclude that the bouncer in *Noah* acted far outside the course and scope of his employment when he attacked a patron outside the bar because of an interaction between the patron and the bouncer's girlfriend.  Finally, *Noah*  firmly

supports previous holdings that "an employer is held liable to a third person for a tort, even though not directed or commanded nor expressly authorized by the employer, provided that the employee or agent has committed such act while engaged in the activity falling within the scope of his authority or employment." _Id_. at 910 (citations omitted). "If the act is fairly and naturally incident to the employer's business although mistakenly or ill advisedly done, and did not arise wholly from some external, independent or personal motive, it is done while engaged in the employer's business. _Id_. (citations omitted).

There is no dispute that Defendant Antoniak was requested by CSI to provide crowd control at Bartle Hall on the night in question. And it is clear that Antoniak acted on behalf of CSI in seeking to remove Mr. Sherf from the fallen woman in furtherance of that assignment. In fact, Officer Antoniak removed Mr. Sherf from the scene at the request and direction of CSI Supervisor David Powell (Antoniak Depo., page 66, lines 11-13, "And Mr. Sherf kept interfering with the medics, and David Powell asked me to remove him, so I removed him."). Thus, he did so while engaged in the business of his employer. This concept is discernible also in _Mansfield v. Smithie_, 615 S.W.2d 649 (Mo.App.W.D.1981), where the Western District Court of Appeals held that the owners of a nightclub were vicariously liable for the conduct of their employee who assaulted a patron with brass knuckles, on the basis that the nature of the business brought the employee into contact with the public and his use of force was not unlikely, and that the employee's conduct occurred during the hours of his employment at the authorized place of employment and in furtherance of the business. The same is true in the instant case. Antoniak would not have had contact with Mr. Sherf but for his employment with CSI and his assignment to control the crowd at Bartle Hall. As well, Antoniak's conduct

2

occurred within the hours of his employment with CSI at the authorized place of employment and in furtherance of CSI's business. He was paid for by CSI for his work that night, including for the time of his arrest of Mr. Sherf. (Antoniak Depo., page 45, lines 9-1, "Q: Were you paid for the entire night, February 15th, 2002, from Crowd Systems, Inc.? A: Paid for whatever time I was there."). It does not require a leap in imagination to conclude that Antoniak was acting for the interests of CSI at the time he arrested Mr. Sherf.

Finally, Defendants assert that Missouri has yet to address the issue of off-duty police officers working for private security companies vis-à-vis their vicarious liability, in an apparent attempt to divert attention on the issue by citing non-binding authority from outside jurisdictions. In fact, Missouri has addressed almost the very point in _Nelson v. R.H. Macy_, 434 S.W.2d 767 (Mo.App.1968). There, the defendant employed a Kansas City, Missouri police officer during his off-duty hours, to protect the store and to apprehend shoplifters. While not identical to the case at bar, _Nelson_ is far more similar factually than is _Noah_. In _Nelson_, the plaintiff brought suit against Macy's for false arrest by the off-duty police officer, alleging vicarious liability for the acts of their officer. As have the Defendants here, the defendant claimed that because the off-duty officer was a Kansas City police officer, the doctrine of respondeat superior could not be applied to impose liability on Macy's. The Court noted as follows:

> It does not follow, however, that because a servant is also a police officer, all his acts are of a public nature, and where he is acting in performance of the duties for which he is employed, or his movements are actively directed by his employer, -- in other words, where he represents his employer and not the public, -- such employer may become liable for his acts.

434 S.W.2d at 772, citing 35 A.L.R. 681.

3

In determining that the off-duty officer's duty was to bring shoplifters to Macy's authority, the Court held the officer was clearly acting under the direction of and as a representative of his employer. Without a doubt, Antoniak was acting as a crowd control agent for CSI, at their bidding and direction. For these reasons, Plaintiff should be permitted to introduce evidence of the vicarious liability of CSI as a result of Antoniak's conduct in their behalf.

**2.      Evidence of Defendants' liability insurance should be excluded.**

Plaintiffs do not oppose Defendants' request to exclude evidence of their liability insurance.

**3.      Evidence of Defendant Antoniak's character should be admitted.**

Plaintiffs agree that, in a civil case, evidence of character generally is not admissible, and that Federal Rule of Evidence 404 prohibits the introduction of evidence of a person's character "for the purpose of proving action in conformity therewith on a particular occasion." However, such evidence is available to impeach a witness in any lawsuit, civil or criminal. _Haynam v. Laclede Electric Coop._, 827 S.W.2d 200 (Mo.banc1992). If Defendants should "open the door" as to the issue of Officer Antoniak's character, then Plaintiff should be permitted to inquire and/or introduce relevant evidence on the matter, including prior citizen's complaints, interoffice complaints, or disputes with other officers, especially as it relates to his treatment of suspected offenders.

**4.      Expert testimony by Plaintiff's treating physicians is permissible and should be admitted.**

Plaintiff has fully complied with the requirements of Fed.R.Civ.P. 26, by providing the identification of "each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses..." Fed.R.Civ.P. 26(a)(1)(A).

4

Plaintiffs' treating health care providers fit squarely within the rule and were timely identified by the Plaintiff. Plaintiff anticipates calling said treating health care providers as trial witnesses, to testify as to the care and treatment they provided to the Plaintiff as a result of his injuries at the hands of Officer Antoniak. As such, they are competent and qualified to testify as to the implications to Plaintiff as a result of those injuries. There is absolutely no prohibition of such testimony in the state of Missouri.

Further, Plaintiff readily acknowledges he has identified for trial no "witness who is retained or specially employed" pursuant to Fed.R.Civ.P. 26(a)(2). Plaintiff's treating physicians were not specially retained nor employed by the Plaintiff to testify at trial, nor can they be considered retained experts under the law by virtue of their knowledge of the Plaintiff and facts involved in his case prior to the litigation. "A retained expert typically has no knowledge about the case or the facts in controversy prior to being retained and instead gathers facts about the controversy through 'documents, materials and other information provided to him' by the attorney who contacted him." _Kehr v. Knapp_, 136 S.W.3d 118, 123 (Mo.App.E.D.2004) (citing _State ex rel. Tracy v. Dandurand_, 30 S.W.3d 831, 834 (Mo.banc2000)). A treating physician, however, has knowledge of the facts of the case and is not retained solely for the purpose of litigation. _Id_. Plaintiff's treating physicians were not retained by Plaintiff or his counsel solely for the purpose of litigation. In fact, they were involved with Plaintiff's care and treatment long before the filing of this lawsuit, and were not even contacted by Plaintiff's counsel about the case until long after treatment ensued. Moreover, the Eighth Circuit generally affords controlling weight to the opinion of a claimant's treating physician. _See_, _Stormo v. Barnhart_, 377 F.3d 801, 805 (8thCir.2004). Accordingly, Plaintiff's treating health care providers are not retained expert witnesses and should be permitted to

5

testify as to the care and treatment rendered to Plaintiff, and to offer their opinions as to the nature and extent of Plaintiff's injuries.

### 5. Evidence of punitive damages is permissible and should be admitted.

Defendant's request to exclude evidence of punitive damages is premature in that it raises a question of submissibility rather than admissibility. Such attempt is improper and not appropriately the subject of a motion *in limine*; the issue is not one of admissibility of the such evidence, but rather the weight of it, which is for the jury to decide. *See*, *High Life Sales Co. v. Brown-Forman Corp*., 823 S.W.2d 493, 502 (Mo.banc1992) (trial court correct in refusing to exclude expert testimony because, in determining damages, the issue is not one of admissibility of expert testimony, but instead is a question of fact for the jury). Thus, Plaintiff is entitled to offer evidence of Defendant's outrageous conduct, and if in fact Plaintiff fails to present evidence sufficient to meet the "clear and convincing standard of proof" required by *Brandt Distrib. Co. v. Fed. Ins. Co*., 247 F.3d 822 (8thCir.2001), then Defendant may move to prevent Plaintiff from submitting the issue to the jury. Defendants' motion to exclude evidence of punitive damages should be denied.

### 6. Evidence that Antoniak did not voluntarily resign should be admitted.

Plaintiff is unable to respond to Defendant's motion to exclude this evidence at this time. Evidence of Officer Antoniak's employment and details of his termination from the Kansas City Missouri Police Department, are the subject of a subpoena which this Court ordered produced to the Court *in camera*. Upon Plaintiff's review of the that information, should the Court permit it, a thorough response will be forthcoming.

6

## 7. Evidence of Plaintiff's mental health care and treatment should be admitted but evidence of his drug use should be excluded.

Plaintiffs do not oppose Defendants' request to admit evidence of Plaintiff's mental health care treatment except to the extent mentioned in Plaintiff's motion *in limine* previously filed with this Court and incorporated herein by reference. That is, Plaintiff agrees the Defendants may inquire as to Plaintiff's prior mental health issues as they are relevant to the injuries he claims herein, but Defendants are not entitled to inquire or introduce evidence as to the mental health care and treatment of Spencer Sherf or marriage counsel of Greg and Nancy Sherf.

With respect to Defendant's motion to allow evidence of marijuana use by the Plaintiff, again, Plaintiff strongly disagrees this evidence is admissible. There is no evidence whatsoever that Plaintiff had consumed or was under the influence of marijuana on the night in question. Nor does Defendant have any evidence is it relevant to Plaintiff's mental health issues. Finally, Defendants have identified no expert witness to testify as to the effect of any such marijuana use by the Plaintiff on the night in question. There is indeed evidence in this case of Plaintiff's occasional marijuana use, however, Defendants can make no connection between such occasional marijuana use and a causative effect upon Plaintiff during Officer Antoniak's attack of Plaintiff or as to his damages resulting therefrom. This information, therefore, is irrelevant and immaterial and should be prohibited at trial. Injecting the issue of Plaintiff's marijuana use would be completely inflammatory and highly prejudicial such that Plaintiff would be deprived of a fair trial on the true issues in this lawsuit. As such, it should be excluded.

## 8. Testimony of witnesses not on Plaintiff's witness list should be admitted.

Defendants have had more than ample notice of Plaintiff's anticipated trial

7

witnesses, since formal notification on December 15, 2006 and by way of supplement on February 22, 2007. In addition, Defendants have been aware of the identity of Dr. Hopkins since this matter was mediated on November 27, 2005, because they were provided with pertinent medical records of Dr. Hopkins on that date. Also, with the postponement of trial in this matter beyond the originally scheduled date of April 9, 2007, and given that a new trial date has yet to be chosen, Defendants have more than enough time to interview and/or depose Dr. William Hopkins and/or Attorney Daniel Craig. Accordingly, Defendants' should not be heard to complain about prejudice as a result of untimely notification of Plaintiff's trial witnesses, and their motion to exclude the testimony of said witnesses should be denied.

9.     **Improper appeals to the jury's sympathies should be excluded.**

Plaintiffs do not oppose Defendants' request to exclude improper appeals to the jury's sympathy.

10.     **Evidence of Plaintiff's lost wages is permissible and should be admitted.**

There is no Missouri case holding that a plaintiff may not offer testimony as to his own lost wages. Instead, such evidence is permissible as long as it is "reasonably certain" and not based upon speculation. _Fairbanks v. Weitzman_, 13 S.W.3d 313,320 (Mo.App.2000). Notably, Defendants' challenge as to the factual basis of Mr. Sherf's assessment of his lost wages is not appropriately the subject of a motion _in limine_, because the issue is not one of admissibility, but rather the weight of that testimony, which is for the jury to decide. _High Life Sales Co. v. Brown-Forman Corp._, 823 S.W.2d 493, 502 (Mo.banc1992) (trial court correct in refusing to exclude expert testimony because, in determining damages and lost profits, the issue is not one of admissibility of

8

expert testimony, but instead is a question of fact for the jury). The ultimate test for damages is whether the award will fairly and reasonably compensate the plaintiff for his injuries. *Sampson v. Mo. Pac. R. Co.*, 560 S.W.2d 573, 588 (Mo.banc1978). Defendants are simply seeking to try the damages portion of this case by way of motions and before a jury is even sworn. They cite cases outside our jurisdiction for support, such as *Cerveny v. Amer. Fam. Ins. Co.*, 626 n.E.2d 1214 (Ill.App.1993). *Cerveny* indeed places the burden upon a plaintiff to offer "something more than [his] unsupported averment as to past income or lost earning capacity." *Id*. at 1224. What Defendants failed to mention, however, is that the plaintiff in *Cerveny* "did not even go so far as to state a precise **or approximate** amount of past earnings. Instead, she attempted to portray herself as a successful salesperson who previewed and showed anywhere from 30 to 60 homes a week, leaving it to the jury to theorize the salary such a busy salesperson would earn." *Id*. (emphasis added). Plaintiff agrees he is required to present evidence of his lost wages that is not based upon speculation. And he certainly has testified in deposition, and will do so at trial if permitted, to a more solidly, "reasonably certain" basis for his claim for lost wages. Defendants' motion to exclude said evidence should be overruled because evidence of Plaintiff's damages is a matter of credibility and jury determination, i.e., the weight of the evidence, rather than its admissibility.

11. **Evidence of offers of compromise or settlement should be excluded.**

Plaintiffs do not oppose Defendants' request to exclude evidence of offers of compromise or settlement.

12. **Evidence of Defendants' net worth should be admitted.**

A court may bifurcate a trial "in furtherance of convenience or to avoid prejudice,

9

or when separate trials will be conducive to expedition and economy." Fed.R.Civ.P. 42(b); _Yung v. Raymark Indus., Inc._, 789 F.2d 397, 400 (6thCir.1986).   In determining whether separate trials are appropriate, the court should consider several facts, including "the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." _Martin v. Heideman_, 106 F.3d 1308, 1311 (6thCir.1997).   There is no request of the Court to bifurcate the trial of this matter, and assuming the case is not bifurcated, Plaintiff objects to Defendants' motion to exclude evidence of their net worth.   "It is well settled that when a plaintiff seeks punitive damages against a defendant, evidence of the defendant's financial status is both relevant and admissible." _State of Missouri, ex rel. Helt v. The Honorable John R. O'Malley_, 53 S.W.3d 623, 624 (Mo.App.2001).   Alternatively, should the Court determine bifurcation is proper, which Plaintiff is _not_ requesting, then Plaintiff will agree to the exclusion of evidence of Defendants' net worth in the first phase of the trial. Accordingly, Defendants' motion to exclude evidence of their net worth should be denied.

13.    **Evidence of other litigation involving Defendants should be excluded.**

Plaintiffs do not oppose Defendants' request to exclude evidence of other litigation involving them.

14.    **Evidence of documents not produced in discovery should be excluded.**

Plaintiffs do not oppose Defendants' request to exclude evidence of documents not produced in discovery, except with respect to photographs taken at Bartle Hall recently that are on their way to the Defendants, and any other exhibits listed on Plaintiff's exhibit list that were obtained by some manner other than through discovery.

**15. Asking counsel for stipulations or for evidence should be excluded.**

Plaintiffs do not oppose Defendants' request to prohibit requests for evidence or stipulations.

**16. Reference to declining to enter into a stipulation should not be admitted.**

Plaintiffs do not oppose Defendants' request to exclude declinations of offers to entire into stipulations.

**17. Reference to verdicts by either Defendants' or Plaintiff's counsel should not be admitted.**

Plaintiffs do not oppose Defendants' request to exclude reference to verdicts by counsel.

DAVID R. SMITH, P.C.

By: _____ */David R. Smith* _____
     DAVID R. SMITH   #39088
     901 W. 43rd Street
     Kansas City, MO 64111
     816-753-9393   FAX: 816-778-0957

LAW OFFICES OF SOPHIE WOODWORTH

By: _____ */Sophie Woodworth* _____
     SOPHIE WOODWORTH   #49383
     4600 Madison, Suite 810
     Kansas City, MO 64112
     816-283-8738   FAX: 816-283-8739

ATTORNEYS FOR PLAINTIFF

11

A copy of the foregoing was served by complying with
this Court's directives on electronic filing upon the following:

John M. Waldeck, Esq.
Brian T. Goldstein, Esq.
ATTORNEYS FOR DEFENDANT ANTONIAK

   s/ Sophie Woodworth