IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | | |
|---|---|---|---|
| GREGORY SHERF, | ) | | |
| | ) | | |
| Plaintiff, | ) | Case No.: | 05-447-CV-W-HFS |
| | ) | | |
| v. | ) | | |
| | ) | | |
| CHARLES ANTONIAK and | ) | | |
| CROWD SYSTEMS, INC., | ) | | |
| | ) | | |
| Defendant. | ) | | |

### DEFENDANTS' REPLY SUGGESTIONS IN SUPPORT OF DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE/ALLOW EVIDENCE

COME NOW Defendants Charles Antoniak ("Antoniak") and Crowd Systems, Inc. ("CSI") (known collectively as "defendants"), by and through their undersigned counsel, and hereby provide the following Reply Suggestions in Support of Defendants' Motions in Limine to Exclude/Allow Evidence:

**1. EVIDENCE OF DEFENDANT CSI'S VICARIOUS LIABILITY FOR ACTS OF DEFENDANT ANTONIAK ONCE ANTONIAK PLACES SHERF UNDER ARREST SHOULD BE EXCLUDED**

This Court should exclude evidence of CSI's vicarious liability for the acts of defendant Antoniak because, as a matter of law, CSI cannot be held to be vicariously liable for any damages that may arise from Officer Antoniak's arrest of plaintiff. At the time of the arrest, Officer Antoniak was not acting under the direction, control or at the request of CSI. Rather, Officer Antoniak was acting as a police officer executing his official duty. Arresting and detaining offenders was not a part of the course and scope of his employment for CSI. He was hired to provide security, not to arrest people. As an off-duty officer, he is certainly under a duty to make arrests and to protect the public no matter where he is or who he is working for. This, however, does not mean that CSI can

be held to be vicariously liable for any damages that might result from Officer Antoniak performing his official duty while he was employed by CSI.

Plaintiff attempts to argue that Missouri has addressed the question of whether an off-duty officer acting as a security guard can be found to have been acting in the course and scope of his duties to a private employer when he makes an arrest. However, the authority suggested by plaintiff does not address this question. The case of *Nelson v. R.H. Macy*, 434 S.W.2d 767 (Mo. App. 1968), does not support plaintiff's argument, and it is not controlling authority. In that case, the court addressed a situation where an off-duty officer was working for a department store. There, the court made it very clear that the officer was hired <u>in order to catch and shoplifters and bring them to the proper Macy's authority</u>. *Id.* at 770. This is exactly what the off-duty officer did, and this is why the department store was held to be vicariously liable for false arrest. In *Macy*, the officer suspected the plaintiff was shoplifting, questioned the plaintiff, called the manager, took the plaintiff to the manager's office, and attempted to convince the plaintiff to sign a Macy's confession form. *Id.* at 769. When the plaintiff refused to do so, the off-duty officer called the police, and a uniformed police officer took the plaintiff outside and had him go to the police station where he was booked for petty larceny. *Id.* at 770.

In deciding that Macy's could be vicariously liable for the acts of the off-duty officer, the court recognized that where the officer "represents his employer and *not the public*, his employer may become liable for his acts." *Id.* at 772 (emphasis supplied, further quotation marks and citation omitted). The court determined that the officer was representing his employer and not the public because 1) his duty was to bring a shoplifter

2

to the Macy's authority, not the proper police or public authority; 2) the determination of what was to be done with the plaintiff was made by the store manager and not by the off-duty officer, and 3) the confession report was prepared for Macy's and not the police. *Id.* The court then determined that under those facts, the officer was acting "in the course and scope of his employment" and not as a public officer. Therefore, the employer, Macy's, could be held liable under *respondeat superior* for the acts of the officer. *Id.*

Here, clearly, the facts are very different. Officer Antoniak was not acting for CSI, he was acting as a public servant. Therefore, under the authority previously cited and under *Macy*, CSI cannot be held to be vicariously liable for any of Officer Antoniak's actions once he places Gregory Sherf under arrest as a matter of law. Furthermore, the great weight of authority from other jurisdictions hold that, in the usual case, the employer of an off-duty police officer cannot be held vicariously liable for the acts of the officer when he is performing his official duty. Here, Officer Antoniak was acting <u>only</u> in his official capacity when he arrested plaintiff. Thus, the *Macy* case is not persuasive authority for plaintiff's argument, but actually supports CSI's position.

Similarly, the case of *Mansfield v. Smithie*, 615 S.W.2d 649 (Mo. App. 1981) also fails to support plaintiff's argument. There, the plaintiff was assaulted by the employee of a night club in retaliation for the plaintiff calling the police after another patron pulled out a gun and stuck it in another patron's face. *Id.* at 653. The owner of the club directed his employee to use force against the plaintiff. *Id.* The court concluded that the owner could be held liable for the acts of his employee because he directed the employee to commit the assault. *Id.* The court further held that the owner's wife, who was also a manager and partner of the establishment, could be held liable for the owner's

3

Case 4:05-cv-00447-JTM   Document 146   Filed 05/10/07   Page 3 of 14

act of directing the assault because it was directly related to his scope of authority as a manager and in furtherance of the business. *Id.*

In the case at bar, of course, Officer Antoniak was not acting to further the business of CSI, but was instead acting in his official capacity as a police officer. Further, no one directed Officer Antoniak to assert or use force against plaintiff. The decision was solely that of Officer Antoniak, acting as a duly-authorized Kansas City, Missouri police officer. Thus, *Mansfield* is inapposite to this discussion.

The case of *Noah v. Ziehl*, 759 S.W.2d 905 (Mo. App. 1988), is more helpful to this discussion because, even though it does not involve an off-duty officer, the court made clear that an employee who acts outside of the scope and course of conduct will not subject his employer to vicarious liability for his acts. In that case, the employee was a bouncer. He was not hired to beat up customers, he was hired to control the entry and exit of patrons. The bar was not held liable for his actions because he was not acting in the course and scope of his employment. *Id.* at 911.

Here, Officer Antoniak was hired to provide security, not to arrest and detain suspects – as was the officer in *Macy*. Nor did he step way beyond his duties as an officer, as did the bouncer in *Noah*. Nor were his actions at the direction of his employer as were those of the bouncer in *Mansfield*. Here, Officer Antoniak acted in his official capacity to arrest and detain when he arrested plaintiff Sherf. As all the courts in the cases cited in Defendants' Motion in Limine agree, under such circumstances, the off-duty officer is not acting in the course and scope of his employment, and therefore the employer cannot be found to be liable for his acts as a matter of law.

4

Plaintiff also claims that because CSI Supervisor David Powell asked Officer Antoniak to remove plaintiff from the area where the paramedics, MAST and fire personnel were treating the woman who fell, Officer Antoniak was acting at the direction of CSI.  However, plaintiff is claiming damages arising from his arrest and the alleged excessive use of force to detain him.  He is not claiming damages arising from the initial removal of him from the area where the woman was receiving treatment.  Furthermore, Mr. Powell did not direct Officer Antoniak to arrest plaintiff, or advise him regarding the amount of force necessary to do so.  Even if he had, because Officer Antoniak was acting in his official capacity, any such direction by Mr. Powell would not have been binding on Officer Antoniak.  He had an independent duty to make lawful arrests and to protect the public arising from his status as a police officer.  Nothing Mr. Powell could have said would have changed that duty or turned him into an employee working within the course and scope of any duties for CSI once Officer Antoniak began to function as an officer of the law rather than as a security guard.

Similarly, plaintiff's argument regarding the fact that Officer Antoniak was being paid by CSI and was "on-the-clock" at the time of plaintiff's arrest does not change the fact that Officer Antoniak was not working in the course and scope of his employment at CSI when he arrested plaintiff.  He was acting as an officer of the law performing his official duties, and not within the course and scope of his employment at CSI

### 4. PLAINTIFF SHOULD BE PREVENTED FROM PRESENTING ANY EXPERT TESTIMONY OR EVIDENCE AS NO EXPERTS HAVE BEEN DESIGNATED OR DISCLOSED BY PLAINTIFF

It is notable that plaintiff focuses his opposition on "<u>retained</u>" experts, but does not specifically address the other category of experts under which Drs. Hopkins and

Murphy would arguably fall, that is "<u>non-retained</u>" experts.  Nevertheless, Fed.R.Civ.P. 26(a)(2) does not differentiate between "retained" and "non-retained" experts, but simply requires <u>all</u> experts to be properly disclosed, including production of a written report, qualifications of the witness, a publication list for the witness, the witness' compensation, and a listing of previous testimony.  *See* Fed.R.Civ.P. 26(a)(2)(A) and (b) (2006).  Non-retained experts are not exempt from the disclosure requirements of Rule 26(a)(2)(A).  *See, Vigilant Ins. v. East Greenwich Oil Co., Inc.*, 234 F.R.D. 20, 22 (D.R.I. 2006) (holding plain language of Rule 26(a)(2)(A) requires disclosure of <u>any</u> person who may present expert testimony at trial); *Poulis-Minott v. Smith*, 388 F. 3d 354, 358 (1st Cir. 2004) (stating that directive of 26(a)(2)(A) is mandatory); *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F. 3d 875, 882 (5th Cir. 2004) ("the expert designation requirement of Rule 26(a)(2)(A) applies to all testifying experts"); other citations omitted.

It is equally notable that both Drs. Hopkins and Murphy were previously identified by plaintiff as "experts" in his withdrawn expert disclosures, but now, plaintiff apparently wishes to try to "backdoor" these witnesses into trial by claiming they are no longer experts, but simply "treating physicians".  This is a distinction without a difference, and is plainly inconsistent with plaintiff's earlier position.

Defendants hereby incorporate their previously filed Motion to Strike Expert Disclosures, and Supplemental Suggestions in Support of Their Motion to Strike Plaintiff's Expert Disclosures, as if more fully set forth herein.  Without re-hashing the arguments set forth in those previous filings, it is defendants' position that plaintiff had his "one bite at the apple" to disclose his <u>experts</u>, whether retained or non-retained, in the case, and voluntarily chose to waive that option.  Plaintiff is now barred from utilizing

any witnesses which would present "expert-type" testimony, whether or not the witness was "retained" or "non-retained", including specifically Drs. Hopkins and Murphy.

As it specifically pertains to Dr. Hopkins, defendants have also moved, on the basis of late-disclosure, to exclude Dr. Hopkins from testifying at trial, and refers the Court to their motion *in limine* #8 on this issue.

### 5. EVIDENCE RELATING TO PUNITIVE DAMAGES SHOULD BE EXCLUDED

Plaintiff is clearly mistaken in his argument that it is inappropriate to seek to exclude evidence of punitive damages at trial by way of a motion *in limine* when there is no evidence in the record to support an award of punitive damages. *See, e.g., Porter-Cooper v. Dalkon Shield Claimants Trust*, 49 F.3d 1285, 1286 (8th Cir. (Mo.) 1995) (motion *in limine* to exclude evidence of punitive damages granted); *Intertel, Inc. v. Sedgwick Claims Management Services, Inc.*, 204 S.W.3d 183, 197-99 (Mo.App. E.D. 2006); *Meyers v. Sudfeld,* 2007 W.L. 419182, *13 (E.D.Pa. 2007); *Pelley v. GAF Corp.*, 1989 W.L. 299054, *3 (M.D.Pa. 1989); *Howard v. Bank of America, N.A.*, 2006 W.L. 1816993, *2 (D.Ariz. 2006). Plaintiff's request for punitive damages in this case is not simply an issue of <u>submissibility</u> of damages, but rather **is** an issue of <u>admissibility</u>, as the issue requires a much more extensive analysis than for compensatory or other types of damages, including whether the alleged conduct of the defendants rose to the level of "evil motive or reckless indifference of the rights of others", whether defendants were "malicious or recklessly indifferent" to plaintiff's civil rights, and also whether plaintiff is able to demonstrate by "clear and convincing" evidence that punitive damages are warranted in the first place.

As cited above, there are numerous cases holding that the issue of whether punitive damages will be admissible at trial can be decided as a motion *in limine* before a trial on the merits ever commences. As such, defendants' request to exclude evidence of punitive damages at trial is not premature or improper, and the Court is permitted to, and should, grant defendant's motion *in limine* to exclude any mention, reference, testimony, or argument as to punitive damages on the basis the record in this case is devoid of evidence justifying an award of punitive damages against defendants.[1]

### 7. DEFENDANTS SHOULD BE ALLOWED TO ADMIT EVIDENCE REGARDING GREGORY SHERF'S PRIOR AND SUBSEQUENT PRIOR MENTAL HEALTH AND DRUG USAGE ISSUES

Plaintiff agrees that defendants may introduce evidence of plaintiff's mental health treatment as it is relevant to the damages claimed in the case. However, plaintiff argues that defendants should not be able to introduce any evidence related to the mental health treatment of plaintiff's son or marriage counseling of plaintiff and his wife. Plaintiff also argues that evidence of his marijuana use should not be admitted. However, as explained previously, all of this evidence is relevant and necessary to the defense.

Plaintiff is claiming damages for mental and emotional suffering. As plaintiff acknowledges, his prior mental health and emotional well-being is relevant to the issues in this case relating to damages. Plaintiff's pre-existing stress was related to his problems with his son, and his son's mental health issues, and his problems with his relationship with his wife. The jury needs to know about these issues in order to properly determine the amount of mental and emotional suffering that plaintiff is claiming that is related to these pre-existing stressors, and the amount that may be due to any stress related to the

---

[1] Plaintiff does not contest defendants' proposition that Defendant CSI cannot be held liable for punitive damages on the sole theory pled against it of r*espondeat superior*. Therefore, this point should be deemed conceded by plaintiff.

incident. Defendants do not intend to enter into evidence any information from plaintiff's son's medical records, but only information from plaintiff's own psychological counseling records that indicate he was having stress that was related to his son's problems. Also, the fact that he was going to marriage and family counseling is relevant and important because it shows he was having stress in those relationships that pre- and post-dated the incident.

Plaintiff's marijuana use is also admissible for a number of reasons. First, the psychological records show that plaintiff was a chronic marijuana user. (See, medical records of Dr. Zaderenko, attached hereto as Exhibit "A"). One of the reasons plaintiff went to individual psychological counseling was to stop using marijuana "three times a day". (*Id.*) Gregory Sherf claimed in his sessions that marijuana was the only thing that was "able to calm [him] down." (*Id.*). This is important to show the extent of his anxiety problems prior to the incident. Second, the marijuana use evidence may also be used to impeach the plaintiff as he claimed in his deposition that he only occasionally uses marijuana, a statement that is in direct contradiction to the statements he made to Dr. Zaderenko. Third, the evidence of his marijuana use is also admissible to explain his erratic behavior on the day of the incident. Dr. Patrick Hughes, defendants' designated retained psychiatric expert, is expected to testify as to the cumulative effects of marijuana use over time on a person's behavior, and this testimony is expected to show that a person, such as plaintiff, who habitually uses marijuana may have difficulty perceiving events as they are unfolding in their true light, and may have unexpected reactions to stressful situations. Therefore, this evidence is not outweighed by any prejudicial effect,

is wholly relevant to the issues pled and damages claimed in the case, and should be admitted.

### 8. ANY WITNESSES NOT IDENTIFIED ON PLAINTIFF'S TRIAL WITNESS LIST SHOULD BE EXCLUDED FROM TESTIFYING AT TRIAL

Plaintiff attempts to argue that late-disclosing witnesses in this case has not caused Defendants prejudice. This could not be further from the truth. The fact that plaintiff has had literally years to prepare his case and determine his potential trial witnesses, but yet did not disclose certain trial witnesses, namely Dr. William Hopkins and Attorney Daniel Craig, until February 22, 2007, slightly more than a month and a half prior to trial, cannot be deemed anything other than prejudicial to the defendants, especially when plaintiff has no "substantial justification" for failing to previously disclose these witnesses pursuant to the Court's Scheduling Orders and Fed.R.Civ.P. 26. Further, plaintiff's comment that since defendants have been aware of the identity of Dr. Hopkins since the case was mediated means they were not prejudiced by his late disclosure as a trial witness is similarly without merit, as simply because the identity of someone is known does not indicate a party intends to call that person as a (expert) witness at trial.

Defendants were entitled to receive a list of trial witnesses, just as defendants provided to plaintiff, to allow defendants to determine who, among the various potential witnesses in the case, needed to be deposed or followed-up with. Because Dr. Hopkins was not included on plaintiff's trial witness list, it was relied upon by defendants that he would not be testifying at trial. This reliance is consistent with the Court's previous Scheduling Order which provides that the parties' witness list "shall include all potential

10
Case 4:05-cv-00447-JTM   Document 146   Filed 05/10/07   Page 10 of 14

witnesses … except those to be used for the sole purpose of unanticipated rebuttal or impeachment." (See January 9, 2006 Scheduling Order, paragraph 4). Clearly, plaintiff does not intend to use Dr. Hopkins "for the sole purpose of unanticipated rebuttal or impeachment", but rather to attempt to elicit expert-type testimony from him in the form of medical opinions as to Gregory Sherf's claimed personal injuries following his arrest.

Plaintiff not only had the opportunity to properly designate Dr. Hopkins as a non-retained expert in this case, but also to disclose him as a testifying trial witness in accordance with the Scheduling Order. Plaintiff failed on both accounts. Therefore, plaintiff should not be heard to argue that defendants now "have more than enough time to interview and/or depose Dr. William Hopkins and/or Attorney Daniel Craig" because of the fortuitousness of the trial continuance, based upon plaintiff's multiple failures to comply with the Court's Scheduling Order and rules of discovery.

### 10. EVIDENCE OF LOST WAGES SHOULD BE EXCLUDED

Plaintiff say nothing in his opposition to defendants' motion *in limine* to exclude evidence of plaintiff's lost wages in response to the various deposition excerpts cited by defendants which clearly establish that Gregory Sherf himself does not know what, if any, wages he may have lost as a result of the February 15, 2002 arrest incident. Instead, plaintiff artfully asserts that he will "if permitted, [testify] to a more solidly, 'reasonably certain' basis for his claim for lost wages." Essentially, plaintiff requests the opportunity to do "a better job" of testifying as to his lost wages at trial. The reality is that Gregory Sherf would have to completely reverse his prior deposition testimony in order to provide a "reasonably certain" basis for his lost wages, in that he has already admitted under oath

that he does not know the amount of wages he may have lost as a result of poor stock market performance versus his arrest.

Contrary to plaintiff's argument, this is not an issue of weight of testimony, rather than admissibility. If plaintiff was unable to state with "reasonable certainty" as to his lost wages at his deposition taken on February 23, 2007, it cannot be reasonably believed that any new information will come to light prior to trial that will allow Gregory Sherf to give any less of a speculative and conjectural opinion as to how much of his wage decrease was caused by the stock market as opposed to his 2002 arrest. Furthermore, the jury will be left with an insurmountable burden of having to sort out and speculate as to not only whether any of his decreased earnings was causally related to his arrest, but if he did suffer any lost wages, what amount of wages is appropriate to award. The result will be a "roving commission" as the jury will have to resort to simply awarding an arbitrary amount to plaintiff without any real basis, rationale or foundation for the amount or calculation. This type of analysis is not something a lay person is able to do, nor should the jury be allowed to do, without additional foundation or expert testimony to support it.

While Gregory Sherf may be permitted to testify on his own behalf as to what he believes his claimed lost wages may be, when he is the <u>sole source of information</u> for his lost wage claim, he cannot be simply given a blank sheet of paper and asked to write down the numbers he chooses. Instead, he must have some reasonable basis for writing down the figures he comes up with. In the case at bar, Gregory Sherf has simply pulled numbers out of the air based upon his historical earnings and has arbitrarily proposed that any reduction in those figures was caused by this incident, despite additional testimony that this is not a correct measurement of his lost wage damages in this case. Mr. Sherf

has admitted under oath that he lacks the knowledge or ability to calculate these figures without resort to rank speculation and conjecture. As such, any claim of lost wages would be improper to submit to the jury, and thus should be excluded from the case.

### 12. COURT SHOULD EXCLUDE ANY TESTIMONY OR REFERENCE REGARDING THE NET WORTH OR FINANCIAL STATUS OF DEFENDANTS

While defendants continue to assert this is not a case warranting punitive damages, such that the net worth or financial condition, status or income of the defendants is irrelevant, defendants hereby move the Court to bifurcate the case as to punitive damages, pursuant to Fed. R. Civ. P. 42(b) and 510.263, R.S.Mo., in the interests of judicial economy and of avoiding confusion and prejudice to defendants, and on the basis that evidence of the defendants' financial conditions and net worth may have an adverse effect on jury deliberations concerning liability and compensatory damages. *See* Fed.R.Civ.P. 42(b); *North Dakota Fair Housing Counsel, Inc. v. Allen*, 298 F.Supp.2d 897, 899 (D.N.D. 2004).

**WALDECK, MATTEUZZI & SLOAN, P.C.**

*/s/ Brian T. Goldstein*
John M. Waldeck     Mo. Bar #47570
Brian T. Goldstein     Mo. Bar #50191
11181 Overbrook Road, Suite 200
Leawood, KS 66211
P: 913-253-2500
F: 913-253-2501
**ATTORNEYS FOR DEFENDANT**

**Certificate of Service:**

The undersigned certifies that on the 10th of May, 2007, the foregoing was electronically filed with the United States District Court for the Western District of Missouri using the CM/ECF system which sent notification of such filing to the following:

David R. Smith
David R. Smith, P.C.
901 W. 43rd Street
Kansas City, MO 64111
P: 816-753-9393
F: 816-778-0957

Sophie Woodworth
Law Offices of Sophie Woodworth
1125 Grand Blvd., Suite 1400
Kansas City, MO 64106
P: 816-519-3876
F: 816-756-2265
**ATTORNEYS FOR PLAINTIFF**

*/s/ Brian T. Goldstein*
ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SIGNING:**

The original of the foregoing document was signed by Brian T. Goldstein and is being kept in the client files of Waldeck, Matteuzzi & Sloan, P.C.