IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

GREGORY SHERF,            )
                          )
    Plaintiff,            )
                          )
v.                        )    No. 05-0447-CV-W-HFS
                          )
CHARLES ANTONIAK, et al., )
                          )
    Defendants.           )

**MEMORANDUM AND ORDER**

    Defendants have filed a motion in limine that is in some respects comparable to what is generally referred to as a motion for partial summary judgment. As reasons for excluding evidence defendants contend that pretrial preparation shows that a submissible case cannot be made on certain aspects of the litigation: 1) plaintiff's claim for long-term lost income, after his arrest accompanied by allegedly excessive force, 2) plaintiff's claim for respondeat superior recovery from the employer of an off-duty policeman, for the period after the policeman undertook to arrest plaintiff, and 3) recoverability of punitive damages against the individual defendant and his employer. These issues are presented as points 10, 1 and 5 in defendant's seventeen point motion in limine, and are probably the most significant issues to be decided.

    Defendants' motion can be summarily GRANTED as to points 2, 9, 11, 13, 15, 16 and 17, which are not contested and need no description here. Points 3 and 6 relate to police department personnel files that are not to be produced, under a prior ruling by the court, and therefore the motion dealing with those points can also be summarily GRANTED, unless there is confidential

disclosure to the lawyers before trial, which conceivably would reopen those issues (although as noted earlier I do not believe there is anything that should be presented to the jury).  The corporate net worth of defendant Crowd Systems, Inc., dealt with in point 12, should also not be disclosed to the jury unless and until the trial judge finds it appropriate, so that aspect of the motion is GRANTED, without prejudice to reopening.

Defendants ask in their point 4 that I exclude expert testimony from treating physicians.  For reasons stated in their briefing, not adequately answered by plaintiff, I GRANT that aspect of the motion in limine.  Treating physicians may, however, serve as fact witnesses, and may testify as to what they did and why they did it, even if that should, for example, disclose opinions formed during medical service to plaintiff that resulted in medication or treatment.

Point 8 asks that I exclude witnesses not identified in witness lists.  Point 14 asks for exclusion of exhibits not timely produced.  Treating a letter from plaintiff's counsel as in effect seeking to supplement the witness list, I rule that the doctor may be treated as a duly listed witness but the lawyer may not.  This ruling is based on my understanding of what has previously been disclosed during litigation, taking into account the delayed trial date.  I understand there is no serious dispute about exhibits, in that belated photographs of the scene have apparently been disclosed and there are no other unlisted exhibits that plaintiff now wishes to introduce at trial.  These objections (points 8 and 14) are DENIED in part, as stated herein.

Questions as to plaintiff's mental health and drug use, point 7, are DENIED as moot, based on my ruling of plaintiff's motion in limine.

\* \* \* \* \*

Turning to what I consider to be the serious issues in the motion in limine, for reasons stated below I GRANT defendants' motion concerning vicarious liability of the corporate employer for post-arrest conduct by the off-duty policeman, defendant Antoniak (point 1). I GRANT the motion concerning corporate responsibility for punitive damages but DENY without prejudice, as premature, a ruling request as to Antoniak's possible exposure to punitive damages (point 5). Based on the record I conclude that plaintiff has no adequately supported evidence for jury allowance of lost income and GRANT that portion of the motion seeking to bar evidence and argument on that subject (point 10).

Missouri law does not cover the issue of respondeat superior liability for the conduct of an off-duty police officer from the time a decision is made to effect an arrest. The issue has been litigated elsewhere, however, and all or almost all courts that have dealt with the question rule for a defendant employer once an off-duty policeman changes roles and resumes a public function, temporarily or permanently during that period of duty.[1] The pre-trial record shows that this occurred here. I conclude that the Missouri courts, if faced with the issue, would accept the principles established in other States.

There is one significant Missouri decision on which plaintiff relies. I consider it close, but ultimately distinguishable as a matter of principle. In a ruling almost forty years ago, the late Judge Howard affirmed recovery against a retail store for "false arrest" by an off-duty policeman of a supposed shoplifter. What happened was, however, somewhat less than a criminal prosecution initiated by the off-duty employee. Nelson v. R.H. Macy's & Co., 434 S.W. 2d 767 (Mo. App.

---

[1] See, e.g., Williams v. Dillard's Dept. Stores, Inc., 211 Fed. Appx. 327, 2006 WL 3825202 (5th Cir.)

1968). The plaintiff was stopped and confined by the employee in the sense that he was taken to "see the manager". The manager asked plaintiff to sign a confession and to promise not to go to the store with intent to keep merchandise without paying for it. Plaintiff refused the request, asserting innocence. At the instruction of the manager the off-duty employee then called "the police" who arrested plaintiff and, accompanied by the off-duty employee in another car, took him to the police station. The court held that the off-duty employee "was acting as a representative of Macy's and not the public." I agree. The off-duty policeman was acting throughout to protect the employer's property and to carry out the manager's directions. It was Macy's, not the off-duty employee, that initiated the formal arrest.

Although it is conceivable that the Missouri courts would extend the Macy's case to cover the more independent conduct of Antoniak, when he decided to arrest plaintiff, I consider it far more likely that the Missouri courts would accept the weight of authority nationally, and the rationale expressed in those cases, and would exonerate the corporate defendant for actions undertaken by Antoniak after he decided to make an arrest and had moved beyond the crowd-control activity for which he was employed.

On the punitive damage issue, plaintiff fails to respond to defendants' contention that there is no automatic respondeat superior responsibility for punitive damages even if, as is assumed, the off-duty officer took action before arresting plaintiff that would create employer liability for compensatory damages. The Restatement draws the line on punitive damages, except in circumstances not applicable here, § 909 Restatement (Second) of Torts (1979). I have previously noted interest in defendants' contention and adopt it at this time. Murphy v. Northwest Mutual Ins.

4

Co., 2005 WL 1421789 (W.D. Mo.) footnote 15. I believe the Missouri courts will follow the Restatement and would reject vicarious liability of Crown Systems, Inc. for punitive damages.

Plaintiff's claim for lost income as a stock broker presents unusual procedural issues. The proof cited by defendants is entirely based on plaintiff's deposition, where he identifies himself as his sole witness, and refers to documentary evidence simply for a compilation of his income changes over the years. He announced his own opinion as to the reasons for variations. Income was entirely based on commissions. In his first deposition, which did not contain details, he said the Bartle Hall incident giving rise to litigation caused him to have trouble focusing on his work, reduced his "drive", and thus held back his productivity. He "didn't want to talk at length to clients" after the Bartle Hall incident in February, 2002. Dep. 171-2, 189.

In the completion of his deposition the financial loss claim was discussed at pages 240-261. This ruling is based on those pages, as plaintiff has not suggested other material to be examined. Plaintiff simply argues he is entitled to jury appraisal of the credibility of his trial testimony, which would be presumably similar to that in his deposition.

At one point in the deposition defendant acknowledged that 100% of his claim is based on "the performance of the market" Dep. 255. If so, defendants contend, the claim is destroyed, as the Bartle Hall incident had no relationship with the market. At another point on the same page, plaintiff was asked to separate commissions lost because of market conditions from those losses caused by "something else." He responded "I don't know if I can quantify that." Dep. 255. Although the answers are in conflict, they both disclaim the lost profit allocation theory that would permit recovery here.

5

Assuming arguendo, however, that plaintiff is entitled to avoid these fatal admissions, his contentions in other portions of his testimony may be summarized as follows: (1) market fluctuations and downturns did not themselves depress his earnings, because they provided added opportunities for sales to new clients dissatisfied with their previous advisors, and (2) family problems at home, relating to his son and wife, did not affect his work adversely because it gave him more time and incentive to devote himself to his work. Dep. 248-9, 253-4, 257-8. All reduced income from 2002 onward was thus in his opinion caused by his reduced motivation attributable to the Bartle Hall incident.

The record of income changes is not in question. During the year 2000 plaintiff's commissions went up about $28,000[2]; during 2001 they went down about $19,000; during 2002 (the year of the incident) they went down about $23,000; during 2003, they went down about $9,000; during 2004, they went up to $27,000; and in 2005 they went down about $17,000. Dep. 249-250.

Plaintiff seeks a total lost income recovery of some $123,000, which eliminates the 2001 reduction that occurred "because of the market". Dep. 248. The gain in 2004 was attributed to "feeling better about things" because "some time had passed". Dep. 251. The next year's decrease was attributed to activation of the law suit after defendant Antoniak was located. Dep. 250, 260.

References were made to being embarrassed in his "standing in the firm" (Dep. 261) and to an opinion that "a lot of my peers were able to grow their business" in 2002, when plaintiff's income was reduced in the year of the incident. Dep. 248. No comparative records for other stock brokers

---

[2]The record refers to "1999 to 2000", but the context makes clear that the reference must be to the year after December 31, 1999. I read the other references in the same manner.

6

are to be presented at trial, and plaintiff does not propose to show a chart or make a statistical presentation that he has had "good years" during market declines, as he testifies can occur.

Turning to the applicable law, I agree with plaintiff that lost profits, like value of one's property, can often be testified to by an owner of a business. I consider plaintiff a self-employed "owner" of his own business in the sense that he is on commission rather than salaried. A case somewhat favoring lay testimony in these circumstances is Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153 (3rd Cir. 1993) (allowing an owner to put together without expert testimony a "lost profit" claim). This case, based on New Jersey law, resulted in a $7 million verdict for lost profits, after the jury heard a $70 million claim, but the appellate court volunteered that a verdict for the larger figure might not have been sustained. 4 F.3d at 1176. Court decisions do, occasionally upset verdicts and bar lay opinion testimony when it is considered overly speculative or based on conclusory claims without adequate foundational support, in other words, mere conjecture. See, e.g., Mooring Capital Fund, LLC v. Phoenix Central, Inc., 2007 WL 22292426 (WD Okla.) (sustaining motion in limine to bar testimony of business owner who had conceded she could not explain the claimed revenue loss without expert assistance); Ariens Company v. Woods Equipment Company, 2006 WL 2597979 (E.D. Wis.); KW Plastics v. United States Can Co., 131 F.Supp. 2d 1265, 1272-5, (M.D. Ala. 2001). In Mostly Media, Inc. v. U.S. West Communications, 186 F.3d 864 (8th Cir. 1999) Judge Richard Arnold wrote an affirmance of a mid-trial rejection of lost profit claims (which included owner opinion testimony) as speculative and lacking necessary foundation. It is clear that federal courts have gate-keeper roles, to be exercised early or before submission, for

7

opinion evidence that reasonable jurors could not rely on. The strongest signal to that effect is in Daubert[3] relating to expert opinion.

I recognize that Daubert and its progeny should be applied with great caution. But unsupported subjective beliefs of parties and witnesses can be rejected both pretrial and at trial. In a different context, personal opinions of a plaintiff regarding victimization by discrimination are routinely rejected at the pretrial stage when there is no circumstantial evidence to support the plausibility of the views, regardless of sincerity. Plaintiff's proposed testimony on lost income attributable to the Bartle Hall incident is inconsistent and incoherent, and impossible to pin down except as to the underlying income records, which do not take us very far. I am most troubled by plaintiff's reference to the experiences of his colleagues. Assuming what he says is hearsay, and that income records of plaintiff's "peers" are considered confidential, I am satisfied that problem could have been handled in a manner to demonstrate whether there is or is not circumstantial evidence that something otherwise inexplicable happened to plaintiff's career in February, 2002. Some showing could also easily be made verifying, if possible, plaintiff's theory that a depressed market can be exploited to increase a broker's income.[4] Either this has happened or it has not, in plaintiff's career.

I conclude that plaintiff's unsupported and vague theory of lost income as damages cannot fairly be presented to the jury, given the full context of this record.

---

[3]Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)

[4]I do not suggest an invariable requirement of circumstantial evidence rendering lost profit opinion evidence admissible. Unlike the strict requirements that seem to be imposed in discrimination cases, I sense that a rule of necessity is sometimes used in lost profit cases. If no verifying circumstantial evidence is possible the courts sometimes take their chances with "rough justice" achievable with juries. Something like this apparently occurred in Lightning Lube, supra.

8

In rejecting the proposed lost income testimony I am disregarding credibility issues that might be evaluated by a fact-finder. It does, however seem strange to label income loss as the product of market conditions in 2001 and then assert later reductions from the Bartle Hall events were the sole cause of another loss the next year. It is also surely odd to claim family troubles as an incentive to work while the incident in this case had just the opposite effect.

The motion in limine set forth in point 10 must be granted.

It is therefore ORDERED that defendants' motion in limine (Doc. 120) be granted in part and denied in part pursuant to this opinion.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

August 27, 2007

Kansas City, Missouri